# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:12-CV-189-RLV-DCK

| | |
|---|---|
| ANTHONY SCOTT SPENCER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 7) and Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 11). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that Defendant's "Motion For Order Affirming The Commissioner's Decision" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.  BACKGROUND

Plaintiff Anthony Scott Spencer ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On August 17, 2009, Plaintiff filed an application for a period of disability and disability

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.

insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, alleging an inability to work due to a disabling condition beginning May 1, 2005. (Transcript of the Record of Proceedings ("Tr.") 12, 143-147). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on October 29, 2009, and again after reconsideration on March 30, 2010. (Tr. 12, 75-78, 83-85). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 83).

Plaintiff filed a timely written request for a hearing on April 14, 2010. (Tr. 12, 93-94). On July 27, 2011, Plaintiff appeared and testified at a hearing before Administrative Law Judge Helen O. Evans ("ALJ"). (Tr. 12, 34-72). In addition, Joey Kilpatrick, a vocational expert ("VE"), and Timothy D. Welborn, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on September 23, 2011, denying Plaintiff's claim. (Tr. 9-27). Plaintiff filed a request for review of the ALJ's decision on November 23, 2011, which was denied by the Appeals Council on October 24, 2012. (Tr. 7-8, 1-3). The September 23, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on December 3, 2012. (Document No. 1). On December 4, 2012, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 7) and Plaintiff's "Memorandum In Support Of Motion For Summary Judgment" (Document No. 8) were filed March 28, 2013; and Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 11) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 12) were filed July 15, 2013. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 1, 2005, the alleged onset date, and the Plaintiff's date last insured, December 31, 2010.[2] (Tr. 12). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 12, 26-27).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since May 1, 2005, his alleged disability onset date. (Tr. 14). At the second step, the ALJ found that chronic ankle pain; shoulder impingement syndrome; back pain due to history of T5 compression fracture; and obesity, were severe impairments. (Tr. 14).[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 19).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform a limited range of light, unskilled work, including the following limitations:

> [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to lift twenty pounds occasionally and ten pounds [more frequently], but could perform only limited pushing and pulling with his lower extremities. He could sit, stand, and

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

> walk six hours in an eight-hour workday; however, [Plaintiff] would need the option to sit or stand at will. He could never climb ladders or ropes, and could occasionally climb stairs, balance, stoop, bend, kneel, and crouch. He is right hand dominant, and could frequently reach with his upper right extremity. Additionally, he should have avoided concentrated exposure to workplace hazards, such as dangerous machinery and working at unprotected heights; avoided concentrated exposure to vibration; and avoided concentrated exposure to extreme heat and extreme cold. Due to pain and limited education, he would have had some difficulty following and performing detailed tasks but would have been able to maintain the mental residual functional capacity to perform simple, routine, and repetitive tasks that involved only simple, work-related decisions. He should not have worked closely with the general public or in close coordination with others, but could have worked in the presence of coworkers, and he could have related and accepted instructions and criticism appropriately from supervisors. He should have had only occasional telephonic contact with the general public in the workplace. Additionally, he should have only worked in low-stress jobs without numerical production goals; and would have required a stable work environment, meaning only occasional change in work setting or assignment.

(Tr. 20, 64). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 20-21). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21).

At the fourth step, the ALJ found that Plaintiff could not perform his "past relevant work as a full fledge lineman, DOT #821.361-026, which is heavy in exertion and has an SVP of 7, which is skilled in nature." (Tr. 25). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and

residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 25). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included assembler of electronic parts, a folding machine operator, and an inspector (inspecting batteries). (Tr. 26). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 1, 2005 and December 31, 2010. Id.

Plaintiff on appeal to this Court assigns error to the ALJ's: (1) evaluation of Plaintiff's mental impairment and RFC function; (2) finding that Plaintiff could perform a full range of light work; and (3) alleged failure to find that Plaintiff's obesity is severe and affects his ability to work. (Document No. 8, p.3). The undersigned will discuss each of these contentions in turn.

**A. Mental Impairment**

In his first assignment of error, Plaintiff argues that the ALJ failed to evaluate Plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. § 404.1520a. (Document No. 8, pp.8-11). Plaintiff contends that the "ALJ did not consider all of the evidence appropriately and ignored evidence which was contrary to her final opinion." (Document No. 8, p.11).

For example, Plaintiff asserts that "the ALJ seemingly ignored the evidence from Carl Elledge and Jerry Rhodes that the claimant is unable to learn the skills necessary for competitive employment." (Document No. 8, pp.9-10). Plaintiff further asserts that consistent with Dr. Padgett's opinion, and Plaintiff's testimony, Dr. Nelson reported that he "has markedly limited abilities to understand, remember, and carry out instructions." (Document No. 8, p.10). Plaintiff also suggests that the evidence shows that his past relevant work, as actually performed, was not highly skilled. Id. Plaintiff concludes that there is substantial evidence supporting a finding that

7

his "learning disability and mental retardation constitute a severe impairment" that "would certainly erode [Plaintiff]'s vocational base." (Document No. 8, p.11).

In response, Defendant argues that substantial evidence supports the ALJ's assessment of Plaintiff's mental abilities and resulting RFC. (Document No. 12, pp.6-9). The undersigned finds Defendant's argument persuasive, and adopts it as follows.

The ALJ specifically notes that Sharon Skoll, Ph.D., a state agency psychological consultant, opined in October 2009 that Plaintiff could understand and remember short and simple instructions; could sustain concentration, persistence, and pace to complete simple tasks; could interact appropriately with co-workers, supervisors, and the general public; and could adapt to routine changes in the workplace. (Tr. 16, citing Tr. 408-09). Dr. Skoll also opined that, overall, Plaintiff was capable of performing "SRRT's," *i.e.*, simple, routine, repetitive tasks (Tr. 409).

The ALJ also cites to Daniel Nelson, Psy.D., another state agency psychological consultant, who essentially concurred with Dr. Skoll in March 2010, although Dr. Nelson further opined that Plaintiff should be limited to a "low stress" environment in which he did not have "extensive" contact with the general public. (Tr. 16-17, citing Tr. 435 - 437). The ALJ adopted these opinions, including the additional limitations recommended by Dr. Nelson. (Tr. 20). Defendant goes on to argue that the opinions of Skoll and Nelson are consistent with and well supported by the record as a whole. (Document No. 12, p.7) (citing 20 C.F.R. § 404.1527(c)(4)).

First, Defendant notes that psychological consultative examiner Harry Padgett, Ed.D., opined in September 2009 that Plaintiff was able to follow simple instructions. (Tr. 16) (citing Tr. 376). Moreover, the ALJ indicates that Plaintiff himself reported to the Agency that he could follow spoken instructions "very well." (Tr. 17) (citing Tr. 214). In that same report, Plaintiff

8

also indicated that his impairments did *not* affect his abilities to understand or follow instructions. (Tr. 214, 227). In addition, consultative examiner Mihir Patel, M.D., reported in October 2009 that Plaintiff was able to follow simple commands. (Tr. 383).

Second, Defendant asserts that the ALJ also states that Plaintiff's work history demonstrated that he was able to follow simple instructions. (Tr. 18-19) (citing Tr. 56-57). Plaintiff worked as a lineman for approximately nine years. (Tr. 193, 200). Plaintiff testified at the hearing that every day he had to follow instructions provided by the foreman and that, whenever he was required to learn something new, he "pick[ed] it up and remember[ed] it." (Tr. 56-57). Although Plaintiff asserted at the hearing that, when he was unable to understand something, his co-workers would tell him what to do "step by step," it does not appear that this assertion materially contradicts the opinions of the state agency psychologists because Plaintiff neither indicated how frequently this occurred nor suggested that he was unable to follow his co-workers' step by step instructions. (Tr. 57-58).

Third, Defendant notes that the ALJ observed Plaintiff "was holding himself out as being able to work" by actively looking for a job and by attending sessions with two different vocational rehabilitation services. (Tr. 23) (citing Tr. 411-12, 448-52). The record contains reports generated by representatives of both of these vocational rehabilitation services, Carl Elledge (Tr. 411-12) and Jerry Rhoades (Tr. 448-52). Neither of these individuals suggests that Plaintiff was unable to follow instructions or perform simple, routine, repetitive tasks. Id.

Plaintiff asserts that "Dr. Nelson reported that [Plaintiff] has markedly limited abilities to understand, remember, and carry out instructions." (Document No. 8, p.10) (citing Tr. 435). In fact, Dr. Nelson opined that Plaintiff had marked difficulties with *detailed* instructions. (Tr. 435). That opinion does not contradict the ALJ's RFC finding because the ALJ limited Plaintiff

9

to performing only "simple, routine, and repetitive tasks that involved only simple, work-related decisions."  (Tr. 20).  As stated previously, Dr. Nelson – as well as Dr. Skoll – opined that Plaintiff was capable of performing the kinds of tasks that the ALJ identified in her RFC finding (Tr. 409, 435, 437).

Although Plaintiff asserts that the ALJ "seemingly ignored" the opinions that Mr. Elledge and Mr. Rhoades provided, in fact the ALJ expressly discussed both opinions.  (Document No. 8, p.9);  (Tr. 24-25).  Defendant acknowledges that these individuals essentially opined about Plaintiff's ability to engage in substantial gainful activity, but notes that such opinions concern "an issue reserved to the Commissioner" and, therefore, are not entitled to any special significance.  SSR 96-5p, 1996 WL 374183, at *3.  Moreover, as noted by the ALJ, these individuals suggested that Plaintiff failed to secure employment because he was not making a good faith effort to do so, because the job market was poor, and because Plaintiff had a "somewhat 'boss' attitude," meaning he tried to tell co-workers what to do even if they had more experience than he did.  (Tr. 23-25, 412, 451).

Regarding Plaintiff's criticism of the weight afforded Dr. Padgett's opinion, Defendant further asserts that the ALJ properly observed that Dr. Padgett acknowledged Plaintiff "probably functioned at a somewhat higher level" than his IQ score would suggest.  (Tr. 18) (citing Tr. 377).  Apparently, Dr. Padgett based this statement upon Plaintiff's "educational, vocational, and functional history," and the fact that all but one of the components of Plaintiff's IQ score were borderline.  Id.

Defendant acknowledges that Dr. Padgett diagnosed Plaintiff with a learning disorder, but argues that the diagnosis of a condition "'says nothing about the severity of [that] condition.'" (Document No. 12, p.13) (citing Tr. 376);  Brewton v. Astrue, No. 1:09-cv-188-MR-

DLH, 2010 WL 3259800, at *6 (W.D.N.C. July 26, 2010) aff'd, 2010 WL 3259795. (W.D.N.C. Aug. 18, 2010) (quoting Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)). Moreover, the ALJ specifically cited this diagnosis, and then accounted for it in the RFC by adopting the opinions of Drs. Skoll and Nelson, both of whom specifically noted that Plaintiff suffers from a learning disorder. (Tr. 18, 394, 422).

With respect to Dr. Padgett's opinion that Plaintiff would have "some difficulty" performing repetitive and routine tasks, the ALJ found that that this opinion was inconsistent with Plaintiff's work as a lineman. (Tr. 18) (citing Tr. 377). Defendant concludes that the ALJ's RFC finding accounts for many of the limitations that Plaintiff attributes to his learning disorder. (Document No. 12, p.14) (citing Tr. 20). The undersigned agrees.

**B.     Residual Functional Capacity**

Next, Plaintiff challenges the ALJ's purported finding that Plaintiff was able "to perform a full range of light work." (Document No. 8, pp.11-12). Plaintiff argues that the Commissioner bears the burden of proving that the claimant remains able to perform other jobs in the community, and that here, the Commissioner "has not satisfied his burden of proving that the claimant is capable of working a consistent schedule of 8 hours per day." Id.

As an initial matter, the undersigned observes that the ALJ did not opine that Plaintiff could perform a "full range of light work;" rather, the ALJ stated that Plaintiff's RFC "restricted him to a limited range of light, unskilled work" and specified numerous limitations that are inconsistent with a full range of light work. (Tr. 20, 25-26).

In addition, Defendant effectively argues that it was not the Commissioner's burden to prove that Plaintiff could work an eight hour day; instead it is *Plaintiff's burden* to establish his RFC by demonstrating how his impairment impacts his functioning. (Document No. 12, p.15)

(citing 20 C.F.R. § 404.1512(c); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); and Plummer, 5:11cv006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (same). Contrary to Plaintiff's argument, the governing regulations never "place on [the Commissioner] the burden of proving RFC." Id.

Defendant further asserts that Plaintiff's suggestion that remand would be warranted if "[t]he greater weight of the evidence" indicated that he was unable to work an eight hour day is not an accurate statement of the governing law. (Document No. 12, pp.15-16) (citing Hancock, 667 F.3d at 472 (substantial evidence may be less than a preponderance); and Lester, 683 F.2d at 841 (decision supported by substantial evidence must be upheld even if reviewing court disagrees with it)).

The undersigned again finds Defendant's argument persuasive. As noted above, this Court is not permitted to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990). As such, Plaintiff's argument regarding what the "greater weight of the evidence in the present case shows" is not availing here.

**C.     Obesity**

Finally, in his third assignment of error, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's obesity. (Document No. 8, p.12-13). Plaintiff cites to SSR 02-01p: "the combined effects of obesity with other impairments may be greater than might be expected without obesity." (Document No. 8, p. 13). Plaintiff argues that "the ALJ erred by not fully

considering the effect of claimant's severe impairment of obesity upon his functional ability to work." (Document No. 8, p.12).

Defendant counters that "the ALJ expressly stated that she considered the cumulative effect of obesity on [Plaintiff's] musculoskeletal system, as required by SSR 02-1p" and that the ALJ specifically found that Plaintiff's obesity was a "severe impairment." (Document No. 12, p.17) (quoting Tr. 14, 23). Defendant further asserts that "although a handful of records mention Plaintiff's obesity in passing and/or indicate that Plaintiff was encouraged to lose weight for better health, the one record that explicitly lists Plaintiff's problems omits obesity, and every other document in the voluminous transcript is *completely silent* concerning Plaintiff's obesity." Id. (citing Tr. 381-84, 446, 454, 461, 466). Defendant notes that Plaintiff consistently omitted obesity from the list of impairments that allegedly caused his disability -- failing to address his obesity at the hearing, in the brief that he submitted to the ALJ, or in the brief that he submitted to the Appeals Council. Id. (citing Tr. 192, 243, 256, 262-64, 280).

In McKinney v. Astrue, this Court held that Plaintiff's failure to "set forth how her obesity further impaired her ability to work," or an "explanation of how her obesity would have impacted the ALJ's five-step analysis" does not warrant remand. McKinney, 1:11-CV-199-MR-DLH, 2012 WL 6931344 at *3 (W.D.N.C. Dec. 11, 2012). Also, this Court found the ALJ's failure to explicitly address a plaintiff's obesity was offset by the ALJ's implicit inquiry regarding her obesity. Id.; see also, Skarbek, 390 F.2d at 504; Rutherford, 399 F.3d at 552-54; Coldiron v. Comm'n of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010).

Accordingly, the undersigned will decline to recommend that remand is required for the ALJ to further consider Plaintiff's obesity.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 7) be **DENIED**; Defendant's "Motion For Order Affirming The Commissioner's Decision" (Document No. 11) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: January 9, 2014

David C. Keesler
United States Magistrate Judge